UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| | § | |
| Phillip Rick Tucker and Neill Whiteley, | § § | |
| | § | |
| *Plaintiffs*, | § | Civil Action No. 4:25-cv-02770 |
| | § | |
| v. | § | |
| | § | |
| Cyberlux Corporation et al., | § | |
| | § | |
| *Defendants.* | § | |

## <u>MEMORANDUM AND RECOMMENDATION</u>

This opinion addresses several, but not all, pending motions in this breach-of-contract dispute between Plaintiffs Phillip Tucker and Neil Whiteley ("Plaintiffs") and Defendant Cyberlux Corporation ("Cyberlux"). After the case was removed to this Court, Plaintiffs filed a motion to remand, Dkt. 17, and motion for emergency temporary restraining order ("TRO") and preliminary injunction, Dkt. 20, to which Cyberlux filed a consolidated response, Dkt. 28.

Two of Cyberlux's motions are addressed herein. One requests that the Court "confirm" the state court's temporary restraining order had terminated. Dkt. 9. In the other, Cyberlux moves to dismiss for improper venue, or alternatively, to transfer the case to the U.S. District Court for the Middle District of North Carolina. Dkt. 7. Plaintiffs did not file a response to that motion but alluded to it in their motion to remand. *See* Dkt. 17 at 11-12.

After considering the motions, Cyberlux's response, the record, and the applicable law, it is recommended that Plaintiffs' motion to remand (Dkt. 17) and motion for TRO and preliminary injunction (Dkt. 20) be denied.

Based on a contractual forum-selection clause, the Court further grants Cyberlux's request to transfer this case to North Carolina.[1] *See* Dkt. 7. But the transfer should await the Court's determination of whether to adopt the recommendations regarding remand and injunctive relief. Cyberlux's motion to confirm the termination of the state court's TRO (Dkt. 9) is denied as moot. The remaining motions, namely Plaintiffs' motions that Cyberlux's counsel "show authority" and seeking to disqualify Cyberlux's counsel (Dkt. 23, 34), and Cyberlux's motion to strike related evidence (Dkt. 38), should be carried with the case following its transfer.

## **<u>Background</u>**

This suit ought to be a straightforward breach-of-contract dispute. But several of the parties' submissions rely heavily on the course of proceedings in other cases, including one in Texas state court, and another in Virginia federal court. Thus, the following facts are taken from the record in this case and

---

[1] Unlike motions to remand and for injunctive relief, motions to transfer venue are non-dispositive matters that U.S. Magistrate Judges can resolve by order. *See Blanton v. Davis*, 2017 WL 3447864, at *2 (N.D. Tex. July 5, 2017) (party consent not required for transfer orders, which are non-dispositive); *ColorQuick, L.L.C. v. Vistaprint Ltd.*, 2010 WL 5136050, at *3 (E.D. Tex. July 22, 2010) (same).

public filings from those other two cases. The Court takes judicial notice of those other cases and their filings.

### A. In a different case filed by judgment creditors (*Atlantic Wave*), the state court appointed a receiver over Cyberlux.

In July 2024, Atlantic Wave Holdings, LLC and Secure Community, LLC filed a petition in Harris County District Court to enforce a judgment obtained in the Circuit Court of the City of Richmond, Virginia, awarding $1,572,500.00 in damages, $177,126.19 in attorneys' fees, and other relief against Cyberlux Corporation and Mark D. Schmidt. *See* Petition to Enforce Foreign Judgment, *Atl. Wave Holdings, LLC v. Cyberlux Corp.*, No. 2024-48085 (129th Jud. Dist. Ct., Harris Cnty., Tex. July 30, 2024) (hereinafter, the "*Atlantic Wave*" case). Cyberlux twice attempted to remove the case to federal court, but its attempts were unsuccessful. *See* Memorandum and Opinion on Remand, *Atl. Wave Holdings, LLC v. Cyberlux Corp.*, No. 4:25-cv-01689 (S.D. Tex. May 14, 2025); Dkt. 17-1.

On May 22, 2025, the state court signed an order appointing Robert W. Berleth as receiver to aid the plaintiffs' attempts to collect on their June 23, 2023 judgment, of which the order states that $2,111,086.01 remained outstanding. *See* Order Appointing Receiver, *Atlantic Wave* (signed May 22,

3

2025); Dkt. 28-10 at pdf-pages 195-214 of combined Dkt. 28.[2] The basis for the receivership was Tex. Prac. & Rem. Code § 31.002. *See id.* ¶ 8. The propriety of that order was and remains hotly contested.

Notably, Cyberlux filed a petition for writ of mandamus challenging the May 22, 2025 receivership order. *See* Relators' Petition for Writ of Mandamus and, Alternatively, Appellants' Opening Brief on the Merits, *In re Cyberlux Corp.*, No. 01-25-00455-CV (Tex. App.—Houston [1st Dist.] June 20, 2025, orig. proceeding) (hereinafter "*In re Cyberlux*"). Among myriad contentions, Cyberlux argues that the receivership order improperly grants the receiver discretion to seize and dispose of any and all Cyberlux property, regardless of whether such property is subject to execution or levy or exceeds the amount of the outstanding judgment. *See id.* at 31-33.

The court of appeals stayed the receivership order until it could resolve Cyberlux's request for broader stay throughout the appellate proceeding. Order, *In re Cyberlux* (signed June 30, 2025); Dkt. 28-4. By its terms, the interim stay extends to the "enforcement, utilization, or the taking [of] actions under the authority of the May 22, 2025 Order by the Receiver or any other persons or entities." Order, *In re Cyberlux* (signed June 30, 2025); Dkt. 28-4.

---

[2] The CM/ECF headers of certain documents are illegible because they are superimposed on prior headers. Those documents are cited by reference to the page of the combined pdf that includes those items.

Atlantic Wave filed a motion to lift the interim stay, which is still pending as of this date. *See* Real Parties in Interests' Motion to Lift Stay Imposed by this Court's June 30, 2025 Order, *In re Cyberlux* (filed July 29, 2025).

**B. A Cyberlux creditor filed a federal interpleader action in Virginia, naming Tucker and Whiteley as potential claimants.**

A few days after Cyberlux filed its petition for mandamus, another entity, HII Mission Technologies Corp., filed a federal complaint in interpleader in Richmond, Virginia. *See* Complaint, Dkt. 1, *HII Mission Techs. Corp. v. Cyberlux Corp.*, No. 3:25-cv-483 (E.D. Va. June 24, 2025) (hereinafter *"Interpleader Suit"*); Dkt. 28-10 (headers illegible). The pleading asserts that HII's predecessor subcontracted with Cyberlux to perform certain work for a federal contract. *Id.* ¶¶ 25-26. The pleading notes that Cyberlux had not completed all its obligations and met all conditions precedent to payment— including because HII was still awaiting the federal government's payment for inventory that Cyberlux sent—but if the requirements are ultimately satisfied, then HII would owe up $2,486,557.29 in funds, with an "anticipate[d]" further sum of $23,012,113.64 that could become payable. *See id.* ¶¶ 40, 42, 46-47. Along with Cyberlux, the pleading names Atlantic Wave, Tucker, and Whiteley as Defendants with potential competing interests in the fund. *See id.* ¶¶ 57-62, 74; *see also* Verified Claim Notification and Demand, Dkt. 1-14 at 56-63, *Interpleader Suit* (June 2, 2025 demand letter from Tucker's and Whiteley's

5

counsel); Dkt. 28-11 at pdf-page 308 of combined Dkt. 28 (header illegible).
Tucker later signed a motion, filed by Robert Bertleth—the *Atlantic Wave*
receiver—requesting that HII be directed to deposit funds in the federal court's
registry.[3]  *See* Joint Motion to Deposit Funds into Registry of Court and
Memorandum in Support, Dkt. 25 at 1-3, 8, *Interpleader Suit* (July 17, 2025);
Dkt. 28-13 at pdf-page 408 of combined Dkt. 28 (header illegible).

On August 4, 2025, HII filed an amended complaint that dropped Tucker
and Whiteley as defendants.  *See* Amended Complaint Dkt. 41, *Interpleader
Suit*.  That pleading, coupled with other developments, led the district court to
deny the Atlantic Waver receiver's motion seeking to compel deposit of the
funds, but without prejudice to being renewed after the defendants are served.
*See* Order, Dkt. 57, *Interpleader Suit* (Aug. 11, 2025).

## C. Plaintiffs filed this breach-of-contract suit, seeking sums related to their employment.

On June 11, 2025, shortly after the *Atlantic Wave* receiver was
appointed, but a couple of weeks before the *Interpleader Suit* began, Plaintiffs
Tucker and Whiteley sued Cyberlux in state court, asserting that Cyberlux
breached its contractual obligation to pay their promised salary, bonuses, and
"incentive" amounts under their Employment Agreements.  *See* Dkt. 1-2 at 11.

---

[3] Although Whiteley may have intended to join the motion, the filing uses Tucker's
signature instead of Whiteley's.  *See* Dkt. 25 at 8, *Interpleader Suit*.

The petition claims that Plaintiffs, together, are owed $1,860,017.08, including attorneys' fees, and should be "entitled to participate" in the *Atlantic Wave* receivership, even though they filed the case as a new action.[4] *See id.* at 1, 4-5. The petition also alludes to the HII action, by asserting that the *Atlantic Wave* receiver "has or will be in receipt of approximately $25 million from [Cyberlux's] recent sale of drones." *Id.* at 4.

On June 11, 2025, the state court granted Plaintiffs' request for a TRO and receivership, which expired under its own terms on June 19. Dkt. 1-3 at 3. Cyberlux removed the case to this Court on June 13, 2025, asserting diversity jurisdiction. Dkt. 1 at 1-2. Defendant Mark Schmidt filed a motion to dismiss, Dkt. 5, 6, but he was later dismissed from the case. Dkt. 14.

Plaintiffs filed a motion to remand, which they amended once. Dkt. 15, 17. They also filed a motion for an "emergency" TRO, which they amended twice. Dkt. 18, 19, 20. The Court ordered expedited, consolidated briefing to address both motions. Dkt. 21. Cyberlux timely responded, Dkt. 28, but Plaintiffs failed to timely reply. *See* Dkt. 36 (striking Dkt. 32 as untimely).

---

[4] Puzzlingly, Plaintiffs also styled their filing as a request to "extend receivership" that purportedly was set to expire the following day. Dkt. 1-2 at 2, 5 (alleging that "[r]eceivership is coming to an end tomorrow"). The only receivership, however, is the one in *Atlantic Wave*. Although later stayed, the receivership has not been terminated.

Plaintiffs also filed a "motion to show authority" directed at Cyberlux's counsel, Dkt. 23, to which Cyberlux recently responded, Dkt. 37, including by moving to strike Plaintiffs' supporting declarations, Dkt. 38. Plaintiffs also filed a motion to disqualify Cyberlux's counsel, Dkt. 34 (filed August 4, 2025), which is not yet ripe for resolution.

## Analysis

## I.  **Plaintiffs' motion to remand is without merit.**

Plaintiffs filed both an original and amended motion to remand this case. *See* Dkt. 15, 17. They maintain that complete diversity of citizenship is lacking because Cyberlux's principal place of business is Texas, where Plaintiffs are domiciled. *See* Dkt. 17 at 7-8; *see also* Dkt. 24 (disclosing plaintiffs' domicile). But as shown below, Cyberlux has now proved that its principal place of business is in North Carolina. That conclusion, together with Cyberlux's Nevada state of incorporation, makes Cyberlux diverse from Plaintiffs, who are Texas citizens. The motion to remand should be denied.

### A.  **As the removing party, Cyberlux must prove that jurisdiction exists.**

A defendant can remove, to federal court, an action that was filed in state court if the action could originally have been filed in federal court. 28 U.S.C. § 1441(a). Federal courts, in turn, are authorized to hear cases that either (1) involve questions of federal law, 28 U.S.C. § 1331, or (2) "where the matter

8

in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and is between ... citizens of different States," *id.* § 1332(a)(1).

The removal statute must "be strictly construed and any doubt as to the propriety of removal should be resolved in favor of remand." *In re Hot-Hed Inc.*, 477 F.3d 320, 323 (5th Cir. 2007) (per curiam). "The jurisdictional facts that support removal must be judged at the time of the removal." *Gebbia v. Wal-Mart Stores, Inc.*, 233 F.3d 880, 883 (5th Cir. 2000). The party invoking federal jurisdiction "bears the burden of showing that federal jurisdiction exists and that removal was proper." *Manguno v. Prudential Prop. & Cas. Ins. Co.*, 276 F.3d 720, 723 (5th Cir. 2002). This burden requires proving jurisdiction exists by a preponderance of the evidence.[5] *See Vantage Trailers, Inc. v. Beall Corp.*, 567 F.3d 745, 748 (5th Cir. 2009). Jurisdiction must be established "by competent proof," *see Hertz Corp. v. Friend*, 559 U.S. 77, 96-97 (2010), based on "summary judgment type evidence," *St. Paul Reinsurance Co. v. Greenberg*, 134 F.3d 1250, 1253 (5th Cir. 1998) (quotation omitted).

## B. Cyberlux has proved that the parties' citizenships are diverse.

As a corporation, Cyberlux is "deemed to be a citizen of any State by which it has been incorporated and of the state where it has its principal place

---

[5] Plaintiffs erroneously invoke the "clear and convincing evidence" standard, citing to *Vantage Trailers. See* Dkt. 17 at 7.

9

of business." 28 U.S.C. § 1332 (c)(1). There is no dispute that Cyberlux is incorporated in Nevada. Instead, the debate concerns Cyberlux's principal place of business. "Principal place of business" means the place where "a corporation's officers direct, control, and coordinate the corporation's activities"—i.e., its "nerve center." *Hertz Corp.* 559 U.S. at 92-93. Generally, a corporation's principal place of business is its headquarters. *See id.*

Plaintiffs cite a 2022 offer of employment, which stated that their "principal place of employment shall be" at Cyberlux's "corporate office" in Spring, Texas. Dkt. 17 at 7 (citing Dkt. 17-2 at 1). Plaintiffs equate that office with Cyberlux's principal place of business.

But Cyberlux responds that the Texas facility merely represents the location where Plaintiffs worked for Catalyst Machineworks, LLC. *See* Dkt. 28 at 13 (addressing Dkt. 17-2, the March 30, 2022 offer of employment from Catalyst Machineworks). Cyberlux acquired Catalyst Machineworks in 2022, *see* Dkt. 17-3, which Plaintiffs then dissolved, allegedly without authority, *see* Dkt. 28 at 13-14; Dkt. 28-1 at 4 (Declaration of Mark D. Schmidt).

Additional, uncontroverted evidence proves that Cyberlux did not maintain or operate its headquarters at the Texas location. Cyberlux's President and CEO, Mark D. Schmidt, offices at and makes final decisions from Cyberlux's location at 800 Park Offices Drive, Suite 3209, Research Triangle Park, in North Carolina. *See* Dkt. 28-1 at 3; *see also id.* at 4 (explaining that,

every quarter, Chief Financial Officer David Downing travels to meet Schmidt in North Carolina to resolve budget matters). Cyberlux also maintains its corporate and financial records at its North Carolina headquarters, *see id.* at 4, the same location listed as Cyberlux's principal office in its annual report and corporate disclosures, *see* Dkt. 28-1 at 12, 14. Together, this evidence demonstrates that Cyberlux's nerve center—and thus, its principal place of business—is in North Carolina.

Cyberlux's principal place of business in North Carolina and state of incorporation in Nevada make its citizenship diverse from Plaintiffs'. Plaintiff's motion to remand and interrelated requests for attorneys' fees should be denied.

## II. <u>Plaintiffs are not entitled to obtain a TRO or preliminary injunction appointing a receiver.</u>

Plaintiffs also filed a motion for "emergency temporary restraining order" and preliminary injunction, Dkt. 18, which they amended multiple times, Dkt. 19, 20. The last version (Dkt. 20) moots and supersedes the earlier two filings (Dkt. 18, 19).

"The standards governing a request for a preliminary injunction and a temporary restraining order are the same." *United States v. Brooks*, 2006 WL 2323057, at *1 (S.D. Tex. Aug. 8, 2006). To obtain relief, a movant "must show (1) a substantial likelihood of success on the merits, (2) a substantial threat of

11

irreparable harm absent the injunction, (3) that the harm she will suffer without the injunction outweighs the cost to comply with the injunction, and (4) that the injunction is in the public interest." *Harrison v. Young*, 48 F.4th 331, 339 (5th Cir. 2022) (citing *Jefferson Cmty. Health Care Ctrs., Inc. v. Jefferson Par. Gov't*, 849 F.3d 615, 624 (5th Cir. 2017)).  Due to its "extraordinary" nature, courts cannot grant preliminary injunctive unless "the movant has clearly carried the burden" of persuasion on all four factors.  *See Guy Carpenter & Co. v. Provenzale*, 334 F.3d 459, 464 (5th Cir. 2003). Ultimately, the decision whether to grant such relief lies in the district court's sound discretion.  *See Miss. Power & Light Co. v. United Gas Pipe Line Co.*, 760 F.2d 618, 621 (5th Cir. 1985).

Plaintiffs have failed to show entitlement to a TRO or preliminary injunctive relief.  This is a garden variety breach-of-contract claim that seeks damages consisting of salary, net revenue incentive bonus, and other monetary relief.  *See* Dkt. 20 at 11-17 (detailing various categories of damages).  Except in unusual circumstances, the monetary nature of such relief generally negates a finding of irreparable harm.  *See, e.g., SO Apartments, L.L.C. v. City of San Antonio, Tex.,* 109 F.4th 343, 353 (5th Cir. 2024) (citing *Janvey v. Alguire*, 647 F.3d 585, 600 (5th Cir. 2011) (availability of monetary damages means there is an adequate remedy at law absent "special situations" like multiplicity of actions, impossibility of review, or loss of constitutional freedoms).

Plaintiffs do not substantiate any such special circumstances. Instead, Plaintiffs reach for a nuclear alternative, asking this Court to "establish[ ] Identical Receivership as was in State Court prior to" removal. *See* Dkt. 20 at 18. This request is fundamentally flawed.

The receivership that Plaintiffs reference was created in *Atlantic Wave*, and even there, only under the Texas Turnover Statute, Tex. Civ. Prac. & Rem. Code § 31.002. *See* Dkt. 28-10 at pdf-page 198 ¶ 8 of combined Dkt. 28. That statute is limited to requests by "[a] *judgment creditor*" to "appoint a receiver with the authority to take possession of the [*judgment debtor's*] nonexempt property, sell it, and pay the proceeds to the *judgment creditor* to the extent required to satisfy the *judgment*." Tex. Civ. Prac. & Rem. Code § 31.002(a), (b)(3) (emphasis added). Plaintiffs have not obtained a judgment awarding them relief against Cyberlux and do not qualify as judgment creditors. This provision is wholly inapposite.

Plaintiffs cite no authority supporting their requested relief. "[A]ppointment of a receivership is not a cause of action, but a remedy." *Fundiciones Balaguer, S.A. v. Ferrell-Ross Roll Mfg., Inc.*, 2024 WL 5146062, at *4 (S.D. Tex. Dec. 17, 2024). Under Rule 66 of the Federal Rules of Civil Procedure, "the appointment of a receiver can be sought by anyone showing an interest in certain property or a relation to the party in control or ownership thereof such as to justify conservation of the property by a court officer."

13

*Santibanez v. Weir McMahon & Co.*, 105 F.3d 234, 241 (5th Cir. 1997) (quotation omitted).  But receivership is "an extraordinary remedy that should be employed with the utmost caution."  *Netsphere, Inc. v. Baron*, 703 F.3d 296, 306 (5th Cir. 2012).  It is "justified only where there is a clear necessity to protect a party's interest in property, legal and less drastic remedies are inadequate, and the benefits of receivership outweigh the burdens on the affected parties."[6]  *Id.*

The foregoing requirements are not met.  As Cyberlux notes, Dkt. 28 at 18-19, courts have rejected similar requests to appoint a receiver before a plaintiff has reduced his claims to judgment.  *See Mendy v. Graham Packard, LLC*, 2017 WL 9287495, at *2 (E.D. La. May 23, 2017) (citing, *inter alia*, *Netsphere*, 703 F.3d at 306, which declared that "[t]o justify the appointment of a receiver such claims would already have been reduced to judgment").  Nothing indicates that a receivership is necessary to protect Plaintiffs' potential right to recovery.  Plaintiffs' pages of rhetoric include no *evidence* that any assets in Cyberlux's possession are in imminent danger of being depleted,

---

[6] Section 64.001 of the Texas Civil Practice and Remedies Code similarly emphasizes that "appointment of a receiver is a harsh, drastic, and extraordinary remedy, which must be used cautiously."  *Perry v. Perry*, 512 S.W.3d 523, 527 (Tex. App.—Houston [1st Dist.] 2016, no pet. (citing *Benefield v. States*, 266 S.W.3d 25, 31 (Tex. App.—Houston [1st Dist.] 2008, no pet.)); *see also In re Marriage of Pinkston*, 2024 WL 3858474, at *2 (Tex. App.—Tyler Aug. 15, 2024, no pet.).  Plaintiffs have not addressed Section 64.001's requirements, much less suggest that they differ from federal receivership law.  Plaintiffs have therefore waived reliance on Section 64.001.

14

transferred, or otherwise lost, whether due to fraudulent or other conduct. *See, e.g., Capital Funding, LLC v. TLTX Holdings, LLC*, 2020 WL 264106, at *6 (N.D. Tex. Jan. 17, 2020) (noting lack of analogous evidence when denying request for receivership).

Moreover, as Cyberlux emphasizes, Plaintiffs have been working with the *Atlantic Wave* receiver and asserting their rights in other proceedings. *See* Dkt. 28 at 17-18. Plaintiffs were identified as potential claimants in the Virginia interpleader action and submitted filings requesting that Cyberlux's creditor, HII, be directed to deposit over $25 million in funds in the registry of that court. *See supra* Background Part B; *see also* Complaint, Dkt. 1 at 2, 11-12, 14, *Interpleader Suit*, No. 3:25-cv-483 (E.D. Va. Aug. 4, 2025); Dkt. 1-14 at 56-63, *Interpleader Suit* (June 2, 2025 demand letter from Tucker's and Whiteley's counsel); Dkt. 28-11 at 308-15 of combined pdf (same letter). While the latest pleading omits Plaintiffs' names as potential claimants, Dkt. 41, *Interpleader Suit* (filed Aug. 4, 2025), Plaintiffs nonetheless supported Robert Bertleth, Cyberlux's receiver in *Atlantic Wave*, in his quest to obtain the funds from HII and "accomplish a Global Settlement Agreement and Complete Release" involving numerous Cyberlux creditors—including Plaintiffs. *See* Joint Motion to Deposit Funds into Registry of Court and Memorandum in Support, Dkt. 25 at 1-2, *Interpleader Suit* (July 17, 2025); Dkt. 28-13 at pdf-page 408 of combined Dkt. 28 (header illegible). Yet the very receivership order

15

invoked by the *Atlantic Wave* receiver had been stayed by a Texas intermediate appellate court. *See* Order, *In re Cyberlux* (signed June 30, 2025); Dkt. 28-4.

No matter how those proceedings are resolved—whether the pending appeal of the *Atlantic Wave* receiver order, or the *Interpleader Suit*—Plaintiffs have come nowhere close to showing that creating a receivership is appropriate in *this* case. Plaintiffs' stated desire to participate in the *Atlantic Wave* receivership or claim a piece of the funds potentially recoverable in the *Interpleader Suit* requires them to seek relief *in those cases*. This Court will not permit Plaintiffs to work an end run around those courts and their decisions by making baseless requests for relief here.

### III. <u>This Court need not confirm the termination of a state-court order that self-terminated.</u>

Cyberlux, for its part, filed a "motion to confirm termination" of the state court's TRO that appointed Berleth as receiver in this case. Dkt. 9. But the state-court's *ex parte* TRO expired nearly two months ago, on June 19, 2025. *See* Dkt. 1-3 at 3 ("This Temporary Restraining Order shall continue in full force and effect until 1:30 p.m. on the 19th day of June 2025 ...."). There is no need to confirm what the order makes plain on its face. Cyberlux's request to confirm the obvious is denied as moot.

## IV. The proper forum for this case is the federal court in Durham, North Carolina.

Cyberlux moved to dismiss under Rule 12(b)(3) for improper venue or, alternatively, to transfer the case to North Carolina based on a forum-selection clause. Dkt. 7; Dkt. 8 at 3-7. Specifically, Cyberlux cites its Purchase Agreement with Catalyst, which states in key part, that

> Any legal suit, action, proceeding, or dispute arising out of or related to this Agreement, the other Transaction Documents, or the transactions contemplated hereby or thereby may be instituted in the federal courts of the United States of America or the courts of the State of North Carolina in each case located in the city of Durham and county of Durham, and each party irrevocably submits to the *exclusive* jurisdiction of such courts in any such suit, action, proceeding, or dispute.

*See* Dkt. 8 at 2 (quoting Purchase Agreement § 8.08(a), attached at Dkt. 8-1 at 5-30). According to Cyberlux, this forum-selection clause is both mandatory and applies to Plaintiffs' claims because they arise out of or are related to both the Purchase Agreement and the "transactions contemplated" in that Agreement. *See* Dkt. 8 at 4-5 (citing Dkt. 1-2 at 4, 15-16; Dkt. 8-1 at 10 (Purchase Agreement, Section 1.04, "Trigger Events")). Plaintiffs failed to respond to Cyberlux's motion. At most, they embed a passing challenge to the forum-selection clause in their motion to remand, asserting (without analyzing the clause in full) that it does not apply to their claims for breach of their Employment Agreements. *See* Dkt. 17 at 10-11.

## A.     Forum selection clauses and 28 U.S.C. § 1404(a)

Although Cyberlux argues for dismissal under Rule 12(b)(3) for improper venue, *see* Dkt. 8 at 3, that is not the correct vehicle for addressing the forum-selection clause here.  The Supreme Court has made clear that "[w]hether the parties entered into a contract containing a forum-selection clause has no bearing" on the propriety of venue.  *Atl. Marine Constr. Co. v. U.S. Dist. Ct. for W. Dist. of Tex.*, 571 U.S. 49, 56 (2013).  Instead, the statute governing venue is 28 U.S.C. § 1391.  *See id.*  Unless venue is improper under § 1391, the suit cannot be dismissed under Rule 12(b)(3).  *See id.* ("[A] case filed in a district that falls within § 1391 may not be dismissed under [28 U.S.C.] § 1406(a) or Rule 12(b)(3).").

Cyberlux has not asserted that venue is improper under § 1391(b).  It also appears that venue may be proper here, as the district where a substantial part of the relevant acts and events occurred.  *See* 28 U.S.C. § 1391(b)(2).  Dismissal under Rule 12(b)(3) is therefore unavailable.

Instead, the forum-selection clause "may be enforced through a motion to transfer under [28 U.S.C.] § 1404(a)."  *See Atl. Marine Constr. Co.*, 571 U.S. at 59-60.  Section 1404(a) authorizes courts to transfer a case "[f]or the convenience of parties and witnesses, in the interest of justice," to another federal district or division where it may have been brought.  28 U.S.C. § 1404(a).  The statutory language contemplates weighing certain factors to

18

determine whether a transfer would serve "the convenience of parties and witnesses" and promote "the interest of justice." *See Atl. Marine Constr. Co.*, 571 U.S. 62-63 (quoting 28 U.S.C. § 1404(a)).

"The calculus changes, however, when the parties' contract contains a valid forum-selection clause ...." *Id.* (quoting *Stewart Org., Inc. v. Ricoh Corp.*, 487 U.S. 22, 31 (1988)). In that instance, the law presumes that the contractually-agreed forum serves the interests of justice. *See id.* Thus, "a valid forum-selection clause should be given controlling weight in all but the most exceptional cases." *Id.* (quotation omitted). That leaves only certain public-interest factors that in "rare cases" can justify "keeping a case despite the existence of a valid and enforceable [forum-selection clause]." *Matthews v. Tidewater, Inc.*, 108 F.4th 361, 367 (5th Cir. 2024) (quoting *Noble House, LLC v. Certain Underwriters at Lloyd's, London*, 67 F.4th 243, 249 (5th Cir. 2023)).

**B.    Under North Carolina law, the clause specifying Durham, North Carolina as the proper forum is mandatory and exclusive.**

Because the Purchase Agreement contains a choice-of-law provision, the Court must first conduct a choice-of-law analysis. Before determining whether a forum-selection clause is mandatory or permissive, a federal court sitting in diversity applies the forum state's choice-of-law rules to resolve which substantive law will apply. *See Weber v. PACT XPP Techs., AG*, 811 F.3d 758, 770 (5th Cir. 2016). "Texas law gives effect to choice of law clauses regarding

19

construction of a contract." *Benchmark Elecs., Inc. v. J.M. Huber Corp.*, 343 F.3d 719, 726 (5th Cir. 2003) (citing *In re J.D. Edwards World Solutions Co.,* 87 S.W.3d 546, 549 (Tex. 2002)). Section 8.08 of the Purchase Agreement provides that it "shall be governed and construed in accordance with the internal laws of the State of North Carolina …." *See* Dkt. 8-1 at 27 § 8.08(a). The Court will therefore apply North Carolina law to interpret the contract. *See Benchmark*, 343 F.3d at 726.

In North Carolina, the use of words like "exclusive," "sole," or "only" indicate that the contracting parties intended to make a forum exclusive. *See LendingTree, LLC v. Anderson,* 747 S.E.2d 292, 297 (N.C. Ct. App. 2013). Here, the forum-selection clause provides that "each party irrevocably submits to the *exclusive* jurisdiction" of "federal courts of the United States of America or the courts of the State of North Carolina in each case located in the city … and county of Durham …." Dkt. 8-1 at 27 (emphasis added). The "exclusivity" language makes the North Carolina forum mandatory. *See LendingTree, LLC,* 747 S.E.2d at 297 (quoting and characterizing as mandatory the stipulation addressed in *Internet E., Inc. v. Duro Commc'ns, Inc.,* 553 S.E.2d 84, 86 (N.C. Ct. App. 2001), giving North Carolina courts "sole jurisdiction" with venue lying "exclusively" "in the Superior Court of Pitt County, North Carolina").

Because the forum-selection clause is mandatory, its enforceability depends on federal law. *See PCL Civil Constructors, Inc. v. Arch Ins. Co.,* 979

20

F.3d 1070, 1074 (5th Cir. 2020). And federal law strongly presumes that the clause is enforceable. *See Atl. Marine Constr. Co.*, 571 U.S. at 59-60 (mandatory forum-selection clauses must be "given controlling weight in all but the most exceptional causes"); *Weber*, 811 F.3d at 773.

Having failed to respond to Cyberlux's motion to transfer, Plaintiffs do not challenge, and thus fail to rebut, the presumption that the forum-selection clause is enforceable.[7] Regardless, Cyberlux rightly asserts that the public interests favor having a North Carolina court apply North Carolina law to resolve a contract suit against a corporation principally based in North Carolina. *See* Dkt. 8 at 6.

Plaintiffs' sole challenge—albeit raised only obliquely in their motion to remand, and not in a response to Cyberlux's motion—claims that the forum-selection clause does not apply to the Employment Agreements underlying their breach-of-contract claims. *See* Dkt. 17 at 10-12. Cyberlux, however, contends that the clause governs Plaintiffs' claims because they "aris[e] out of or [are] related to" the Purchase Agreement. *See* Dkt. 8 at 4. For two reasons, Cyberlux is correct.

---

[7] Plaintiffs' passing reference to Texas's fundamental policy imposing limits on enforcing *non-competition clauses* has no bearing on the forum-selection clause's enforceability. *See* Dkt. 17 at 11-12.

First, as Cyberlux argues, Plaintiffs' claims under the Employment Agreements, at minimum, relate to the Purchase Agreement. *See* Dkt. 8 at 2, 4. The forum-selection clause sweeps broadly, reaching not only claims arising out of the Purchase Agreement, but also those "related to" that agreement. The difference between those phrases is significant.

> By using the phrase "arising out of <u>or</u> relating to," the [clause] sets forth two alternative, separate, delineations of scope. On the one hand, "arising out of" signifies that the claim originates with the [Agreement itself]. By contrast, "relating to" signifies a broader connection between claims asserted and the [Agreement].

*Rose Oil Co., Inc. v. PNC Bank, Nat'l Ass'n*, 2016 WL 373961, at *7 (E.D.N.C. Jan. 29, 2016) (applying North Carolina law). As noted in *Rose Oil*, a claim "relates to" an underlying agreement if it "derive[s] directly from the specific relationship created by the relevant agreement," or if the claim would not exist "but for the relationship" the agreement governed. *Id.* (citing *Wachovia Bank, Nat'l Ass'n v. Schmidt*, 445 F.3d 762, 769 (4th Cir. 2006)).

Plaintiff's claims hinge on portions of the Purchase Agreement. According to their petition, Cyberlux failed to give them certain incentive stock. *See* Dkt. 1-2 at 4 (referencing "12.5 million Incentive Shares"). But the petition acknowledges that Plaintiffs' recovery depends on provisions of the Purchase Agreement that define the value of and triggers for receiving those incentive shares. *See id.* at 14-16 (quoting Purchase Agreement §§ 1.02, 1.03(c), and 1.04(a)); Dkt. 8-1 at 10 (Purchase Agreement). This

22

interdependence shows that Plaintiffs' claims have a "significant relationship" with, and would not exist, but-for specific provisions of the Purchase Agreement specifying when the shares would be owed, and if so, how much would be paid. *See Rose Oil*, 2016 WL 373961, at *8-9. Their claims are related to the Purchase Agreement and therefore subject to its forum-selection clause.

Second, Plaintiffs' claims also arise out of the Purchase Agreement because it incorporates their Employment Agreements by reference. In contrast to the broad reach of "relating to," "to fall within the scope of an 'arising under' clause, the cause of action must be based on the contract itself." *EarthKind, LLC v. Lebermuth Co. Inc.*, 2020 WL 1815903, at *5 (W.D.N.C. Apr. 9, 2020) (quoting *Valencell, Inc. v. Apple Inc.*, 2017 WL 2819768, at *6 (E.D.N.C. June 28, 2017)). "When a contract expressly incorporates a document by reference, … [it] becomes a part of the parties' agreement." *Montessori Children's House of Durham v. Blizzard*, 781 S.E.2d 511, 514 (N.C. Ct. App. 2016) (citing *Booker v. Everhart,* 240 S.E.2d 360, 363 (N.C. 1978) (overruled on other grounds)); *see also PCL Civil Constructors*, 979 F.3d at 1075 (applying analogous principle when resolving scope of forum-selection clause). The Purchase Agreement expressly provides that Tucker and Whiteley would "each enter into employment agreements with the Company attached to this Agreement …." Dkt. 8-1 at 10 (Purchase Agreement); Dkt. 8-2, 8-3 (Employment Agreements). Because the Employment Agreements are

23

part of the Purchase Agreement, Plaintiffs' breach-of-contract claims arise out of the latter agreement. This, too, means the forum-selection clause applies to Plaintiffs' claims.

In sum, the Purchase Agreement's clause specifying the federal and state courts in Durham, North Carolina as the exclusive forum is mandatory, enforceable, and applies to Plaintiffs' claims. In lieu of dismissing the claims, this Court grants Cyberlux's alternative request to transfer this case to the U.S. District Court in the Middle District of North Carolina, Durham Division, pursuant to 28 U.S.C. § 1404(a).

## Recommendation and Order

For the foregoing reasons, it is **RECOMMENDED** that Plaintiff Phillip Tucker and Neill Whiteley's Amended Motion for Remand (Dkt. 17) be **DENIED** and the original motion (Dkt. 15) be **DENIED AS MOOT**.

It is further **RECOMMENDED** that Plaintiffs' motion for temporary restraining order and preliminary injunctive relief (Dkt. 20) be **DENIED** and its prior versions (Dkt. 18, 19) be **DENIED AS MOOT**.

It is **ORDERED** that Defendant Cyberlux Corporation's and Mark D. Schmidt's motion to confirm termination of the state court's TRO (Dkt. 9) is **DENIED AS MOOT**.

It is further **ORDERED** that Defendant Cyberlux Corporation's and Mark D. Schmidt's Rule 12(b)(3) motion to dismiss or, alternatively, to transfer

24

venue (Dkt. 7, 8) be **GRANTED IN PART**. It is hereby **ORDERED** that this suit be **TRANSFERRED** to the U.S. District Court for the Middle District of North Carolina, Durham Division, pursuant to 28 U.S.C. § 1404(a)—but only after the Court determines whether to adopt the foregoing recommendations (regarding remand, TRO, and preliminary injunctive relief).

The parties have fourteen days from service of this Report and Recommendation to file written objections. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b). Failure to file timely objections will preclude appellate review of factual findings and legal conclusions, except for plain error. *Ortiz v. City of San Antonio Fire Dep't*, 806 F.3d 822, 825 (5th Cir. 2015).

Signed on August 14, 2025, at Houston, Texas.

_____
Yvonne Y. Ho
United States Magistrate Judge

25